# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARCADIO ROSARIO, JR., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO. 09-4387 |
| | : | |
| J.D. ECKMAN, INC., MARK ECKMAN, | : | |
| RICHARD WITTLENGER, CONTINENTAL | : | |
| CASUALTY COMPANY and CNA FINANCIAL | : | |
| COMPANY, | : | |
| Defendants. | : | |

HENRY S. PERKIN  SEPTEMBER 14, 2010
UNITED STATES MAGISTRATE JUDGE

## MEMORANDUM

Before the Court is the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendants Continental Casualty Company ("CCC") and CNA Financial Company ("CNA") (collectively "Moving Defendants") (Dkt. No. 16). For the reasons that follow, the Motion will be granted.

## I. BACKGROUND AND PROCEDURAL HISTORY.

On February 23, 2004, the Plaintiff, Arcadio Rosario ("Mr. Rosario") susatined an injury during his employment with Defendant J.D. Eckman, Inc. (Am. Compl., ¶¶ 15, 17.) At the time of Mr. Rosario's injury, Defendant CCC was the workers' compensation carrier for Defendant J.D. Eckman, Inc. (Am. Compl., ¶ 18.) On January 16, 2008, Mr. Rosario executed a "Compromise and Release Agreement by Stipulation to Section 449 of the Workers' Compensation Act." (Am. Compl., Ex., B.) Defendant CCC then issued a check to Plaintiff in the amount of $120,000 in full satisfaction of its obligations in the Release. (Id., ¶ 25(a).) On

September 28, 2009, the Plaintiff, Arcadio Rosario ("Mr. Rosario") filed a ten-count Complaint against his former employer, J.D. Eckman, Inc., the company's owner and President, Mark Eckman, and the company's safety director, Richard Wittlenger, alleging violations of the Age Discrimination in Employment ("ADEA") (Count I), violations of Title VII of the Civil Rights Act of 1964 ("Title VII")(Count II), violations of the Americans with Disabilities Act ("ADA")(Count III), violations of 42 U.S.C. section 1981 ("Section 1981")(Count IV), violations of the Pennsylvania Human Relations Act ("PHRA")(Count V), breach of contract (Count VI), breach of the covenant of good faith and fair dealings (Count VII), intentional or reckless misrepresentation of fact (Count VIII), intentional infliction of emotional distress (Count IX) and wrongful discharge (Count X). This case was originally assigned to the Honorable Lawrence F. Stengel, and the parties consented to the exercise of jurisdiction by a Magistrate Judge on March 1, 2010. Judge Stengel entered a March 1, 2010 Order pursuant to 28 U.S.C. section 636(c) and Federal Rule of Civil Procedure 73 referring this case to the undersigned for resolution.

    An April 6, 2010 Scheduling Conference pursuant to Federal Rule of Civil Procedure 16 was conducted and an Order was issued allowing Mr. Rosario additional time to file an Amended Complaint. Mr. Rosario's Amended Complaint against CNA Financial Company, Continental Casualty Company, Mark Eckman, J.D. Eckman, Inc. and Richard Wittlenger was filed on May 5, 2010.[1] On May 10, 2010, Defendants Mark Eckman, J.D.

---

[1] Specifically, Plaintiff's claims are: violations of the Age Discrimination in Employment Act ("ADEA") against J.D. Eckman, Inc. (Count I), violations of Title VII of the Civil Rights Act of 1964 ("Title VII") against J.D. Eckman, Inc. (Count II), violations of the Americans with Disabilities Act ("ADA") against J.D. Eckman, Inc. (Count III), violations of 12 U.S.C. section 1981 ("Section 1981") against J.D. Eckman, Inc. (Count IV), violations of the Pennsylvania Human Relations Act ("PHRA") against J. D. Eckman, Inc., Mark Eckman and Richard Wittlenger (Count V), breach of contract against J.D. Eckman, Inc., Continental Casualty Company and CNA Financial Company d/b/a CNA (Count VI), breach of the covenant of good faith and fair dealings against J.D. Eckman, Inc., Continental Casualty Company and CNA Financial Company d/b/a CNA (Count VII), intentional or

Eckman, Inc. and Richard Wittlenger filed their Response to the Amended Complaint. On June 6, 2010, the Moving Defendants filed a Motion to Dismiss Count VI (breach of contract), Count VII (breach of the covenant of good faith and fair dealing) and Count VIII (intentional or negligent misrepresentation) of the Amended Complaint. Mr. Rosario responded to the Motion to Dismiss on June 24, 2010, and CCC filed a brief in opposition to Mr. Rosario's Motion to Amend the Complaint to Add CNA Financial Corporation as a Defendant on July 7, 2010. On July 23, 2010, this Court ordered the Moving Defendants to file a Reply brief to Mr. Rosario's Response, and a short extension of time was granted until August 6, 2010. On August 10, 2010, Mr. Rosario filed a consent Motion for Leave to File a Sur-Reply, which was granted on August 16, 2010, and Mr. Rosario was ordered to file the Sur-Reply on or before August 20, 2010. On August 17, 2010, Mr. Rosario's verbal Motion for Extension was granted, and Mr. Rosario's Sur-Reply was filed on August 23, 2010.

## II. STANDARD.

A motion to dismiss under Rule 12 (b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The motion to dismiss standard has been the subject of recent examination, culminating with the United States Supreme Court opinion Ashcroft v. Iqbal, 129 S.Ct. 1927 (2009). Following Iqbal, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice" to defeat a Rule 12 (b)(6) motion to dismiss. Id. at 1949; see also Bell Atlantic v. Twombly, 550 U.S. 544 (2007). The Third Circuit Court of Appeals applied the principles of

---

negligent misrepresentation against J.D. Eckman, Inc., Continental Casualty Company and CNA Financial Company d/b/a CNA (Count VIII), intentional infliction of emotional distress against J.D. Eckman, Inc., Mark Eckman and Richard Wittlenger (Count IX), and wrongful discharge against J.D. Eckman, Inc. (Count X). See Dkt. No. 11.

3

Iqbal in Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), and articulated a two-part analysis that district courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12 (b)(6) motion to dismiss.

First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard legal conclusions." Id. at 210-11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950; Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010). The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

### III. DISCUSSION.

#### A. The Claims Against the Moving Defendants.

In the Amended Complaint, Mr. Rosario asserts pendent claims for breach of contract (Count VI), breach of the covenant of good faith and fair dealings (Count VII), and

4

intentional or negligent misrepresentation (Count VIII) against J.D. Eckman, Inc., Continental Casualty Company and CNA Financial Company d/b/a CNA. Mr. Rosario contends that he compromised and released his worker's compensation benefits for a sum less than "the settlement value" and he was misled and induced to compromise and release his benefits by the Moving Defendants and the other Defendants. The Moving Defendants seek dismissal of these claims because they contend that the exclusivity and immunity provisions of the Pennsylvania Worker's Compensation Act ("the Act") bars these claims. Mr. Rosario argues, in response, that:

> The exclusivity provisions of the Act regard work claims for injury or death. The plaintiff's claims are claims in contract that fall outside of the Act. Plaintiff does not attempt to litigate or relitigate his work injury of February 2004. The claims plead against the CNA Defendants are purely contract claims for breach of contract (Count VI), breach of covenant of good faith and fair dealing arising from the fraudulent misrepresentation (Count VII) and claims for misrepresentation that induced the plaintiff to enter into the Compromise and Release Agreement under false pretenses (Count VIII).
> In particular, the Pennsylvania Supreme Court held that claims for fraudulent misrepresentation were not barred by the exclusive remedy provision of the Act. *Martin v. Lancaster Battery Company, Inc.*, 530 Pa. 11, 606 A.2d 444.
> The moving defendants mention the *Martin* case but conveniently disregard and minimize its impact, significance and holding. Instead, the moving defendants mistakenly relies on the lower court holding of *Santiago v. Pennsylvania National Mutual Casualty Ins. Co.*, 418 Pa. Super. 178, 613 A.2d 1235 (1992). The Pennsylvania Superior Court in *Santiago* applied the exclusivity provision under the Act to Santiago's claims "sounding in intentional tort" which does not apply in the instant case pertaining to contract claims.
> Likewise, the moving defendants' reliance on *Kuney v. PMA Insurance Company*, 525 Pa. 171, 578 A.2d 1285 (1990) is misplaced as the plaintiff's federal court action is not seeking compensation for his work injury of 2004. The same argument applies to the moving defendants' misplaced reliance on *Winterberg v. Transportation Insurance Company* 72 F.3d 318 (3d Cir. 1995) and *Fry v. Atlantic States Insurance Company*, 700 A.2d 974 (Pa. Super. 1997) and *Barbee v. Southeastern Pennsylvania Transportation Authority*, 2005 WL 832115 (E.D. Pa.)
> Furthermore, the Workers' Compensation Act is not the exclusive remedy for "intentional" acts of harm. *Fieni v. Pocopson Home*, 1991 WL 220280. The plaintiff's amended complaint pleads detailed claims of intentional

5

misrepresentation that are matters for discovery and trial.

Pl.'s Mem. Law in Supp. Resp., pp. 6-7. In their Reply Brief, the Moving Defendants reiterate that Mr. Rosario's claims against them arise out of his work-related injury and the subsequent settlement of the claims related to that injury, and are therefore barred by the Act. In Mr. Rosario's SurReply Brief, he argues that:

> Plaintiff's discrimination, contract and tort claims in federal court are separate and apart from his Workers' Compensation Petition to set aside the Compromise and Release Agreement of January 18, 2010. The plaintiff's federal court action is not seeking compensation for his work injury of 2004. Similarly, the federal court denied defendants' motion to dismiss concluding that relief was not available under Workers' Compensation Act. *Bath Unlimited, Inc. v. Ginarte, O'Dwyer, Winogard and Laracuente* at 2005 WL 2406097.

Pl.'s SurReply, p. 8.

### B. Whether the Claims Against the Moving Defendants Are Barred by the Act.

The Pennsylvania Worker's Compensation Act ("the Act") provides the framework for injury or death claims by employees against their employers. 77 P.S. Section 481 (a) provides:

> (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees, his legal representative husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of an injury or death as defined in section 301(c) (1) and (2) or occupational disease as defined in section 108.

77 Pa. C.S.A. § 481(a). The Pennsylvania Supreme Court has held that "[t]he workmen's compensation system encompasses all disputes over coverage and the payment of benefits, whether they arise from actions taken by the employer, the employer's insurance carrier, or the insurance carrier's employees or agents." Kernus v. Morrison, No. CIV.A. 94-3179, 1996 WL 180005, at *4 (E.D. Pa. Apr. 15, 1996)(quoting Alston v. St. Paul Ins. Co., 612 A.2d 421, 424

(Pa. 1992) and citing <u>DeJesus v. Liberty Mutual Ins. Co.</u>, 268 A.2d 924 (Pa. 1970)). The employer's immunity provided for in the Act extends to workers' compensation insurers by virtue of 77 P.S. § 501 which provides in relevant part:

> (a) (1) Every employer liable under this act to pay compensation shall inure the payment of compensation in the State Workmen's Insurance Fund, or in any insurance company, or mutual association or company, authorized to insurer such liability in this Commonwealth, unless such employer shall be exempted by the department from such insurance. Such insurer shall assume the employer's liability hereunder and shall be entitled to all of the employer's immunities and protection hereunder except, that whenever any employer shall have purchased insurance to provide benefits under this act to persons engaged in domestic service, neither the employer nor the insurer may invoke the provisions of section 321 as a defense.

77 Pa. C.S.A. § 501.

Mr. Rosario asserts in his Memorandum in Support of his Response to the Motion to Dismiss that his claims against the Moving Defendants are contract claims that fall outside the purview of the Act. Mr. Rosario also contends that he does not seek to litigate or relitigate his work injury of February 2004. The question for this Court is whether the Moving Defendants alleged acts fall outside of the exclusivity provision of the Workmen's Compensation Act. The Moving Defendants cite controlling cases from the Pennsylvania Supreme Court, the Pennsylvania Superior Court, this District Court and the United States Court of Appeals for the Third Circuit on this issue in the Motion to Dismiss and Reply Brief.

In <u>Kuney v. PMA Ins. Co.</u>, 525 Pa. 171, 578 A.2d 1285 (1990), the workers' compensation insurer allegedly failed to pay an injured worker any benefits even though the insurer knew that the worker was entitled to some benefits. While the compensation claim was litigated, the claimant also instituted a civil action seeking damages for injuries sustained by the

7

insurer's alleged fraudulent handling of the compensation claim. The Pennsylvania Supreme Court cited the exclusivity of the Act and the extension of immunity from tort actions to workers' compensation insurers by virtue of 77 P.S. § 501 in reaching the conclusion that "when the allegations of a claim have as their ultimate basis an injury compensable under the Workmen's Compensation Act, the claim must be considered within the framework of the statute." Id. at 176. Thus, the Moving Defendants argue that the Pennsylvania Supreme Court in Kuney foreclosed claims such as Mr. Rosario's claims against CCC for fraud and deceit.

In Santiago v. Pennsylvania National Mutual Casualty Ins. Co., 418 Pa. Super. 178, 613 A.2d 1235 (1992), an employee sued his employer's workers' compensation insurer for fraud, misrepresentation, negligent infliction of emotional distress, intentional infliction of emotional distress and bad faith. The claims arose out of emotional injuries sustained after the employee's suicide attempt which was allegedly caused or related to the insurer's refusal to settle the employee's compensation claim. The insurer filed preliminary objections on the basis that the causes of action alleged were barred by the exclusive remedy provisions of the Act. The trial court granted the preliminary objections and dismissed the complaint. An appeal followed. The Pennsylvania Superior Court affirmed the lower court, determining that the claims fell within the exclusivity provisions of the Act and that the employee's redress was within the Act.

The United States Court of Appeals for the Third Circuit in Winterberg v. Transp. Ins. Co., 72 F.3d 318 (3d Cir. 1995), determined whether an injured employee could disregard the state statutory workmen's compensation scheme and bring a common law action for bad faith, intentional infliction of emotional distress, breach of contract likely to result in emotional distress, and common law fraud and deceit claims against the defendant insurance company. The

Third Circuit adopted the Pennsylvania Superior Court's rationale in Santiago and held that the exclusivity provision of the Act barred plaintiff's claims. The Winterberg Court separately addressed the bad faith claims, recognizing that there could be an independent cause of action for bad faith, but that "cause of action does not supersede statutes already enacted containing exclusive remedies." Winterberg, 72 F.3d at 326. Thus, the Third Circuit affirmed the District Court's dismissal of the plaintiff's claims.

In Fry v. Atlantic States Ins. Co., 700 A.2d 974 (Pa. Super. 1997), the Pennsylvania Superior Court followed the Third Circuit's Winterberg decision and upheld a trial court's dismissal of Plaintiff's claims against a worker's compensation insurer. Finally, in Barbee v. Southeastern Pennsylvania Transp. Auth., 2005 WL 832115 (E.D. Pa. Apr. 11, 2005), the Court dismissed claims made against a third-party administrator for SEPTA's worker's compensation program and, quoting Winterberg, stated "courts have been very cautious about permitting common law litigation in matters arguably connected with work-related injuries." Id. at *3.

Mr. Rosario relies upon Martin v. Lancaster Battery Co., Inc., 606 A.2d 444 (Pa. 1992), and states that Martin held that claims for fraudulent misrepresentation were not barred by the exclusive remedy provisions of the Act. Pl.'s Br., p. 7. The Moving Defendants note that in Martin, the Pennsylvania Supreme Court created a narrow exception to the exclusivity of the Act as it relates to work-related injuries. The court permitted a civil action of an employee to proceed on fraudulent misrepresentation against his employer. The Martin court was faced with a situation where an employer who tested an employee's blood lead levels either intentionally withheld the results or provided the employee with altered test results. The exception created in

9

Martin is predicated on this analysis, "The employee herein has alleged fraudulent misrepresentation on the part of his employer as causing the delay which aggravated a work-related injury. He is not seeking compensation for the work-related injury itself in this action." Id. at 447. The Moving Defendants contend that this narrow exception in Martin to the general rule is not met by the facts of Mr. Rosario's case because Mr. Rosario seeks redress for work-related injuries.

This narrow exception was further outlined in the recent case of Ranalli v. Rohm & Haas Co., 983 A.2d 732 (Pa. Super. 2009), in which the Pennsylvania Superior Court in dicta examined Martin and stated that "the only exception [to the Act] is where the employer knew its employee had a disease and withheld that information, causing an aggravation of that disease." Id. at 735 (citing Martin, 606 A.2d 444.)

The Moving Defendants further set forth additional case law directly on point which upholds the exclusivity of the Act as it relates to Mr. Rosario's claims and in support of their argument that Mr. Rosario's reliance on Martin v. Lancaster Battery Co., Inc., 530 Pa. 11, 606 A.2d. 444 (Pa. 1992) is misplaced. As discussed in the Moving Defendants' June 7, 2010 submission, Martin created a narrow exception to the exclusivity of the Act. That exception was based on a situation where an employer either withheld the results of blood lead level testing or altered the tests. The court determined that this was not a situation where compensation for the work-related injury was being sought. This Court agrees with the Moving Defendants and holds that Mr. Rosario does not meet the narrow exception in Martin because he seeks redress for work-related injuries.

Moreover, the Moving Defendants note two decisions from this Court that directly

addressed whether a breach of contract claim can be barred by the exclusivity of the Act. In Winterberg v. CNA Insurance Co., 868 F. Supp. 713 (E.D. Pa. 1994), *aff'd*, 72 F. 3d 318 (3d Cir. 1995), former Chief Judge Cahn examined the exclusivity of the Act as it related to various causes of action including an alleged breach of contract. The breach of contract resulted from the insurer's alleged failure to pay medical bills relating to a workplace injury. Judge Cahn determined that the failure to pay medical bills was "part of the general handling of plaintiff's worker's compensation insurance claims" by the insurer and that the insurer was "immunized from private suit by the exclusivity provision of the Worker's Compensation Act." Id. at 724.

Similarly, Judge Yohn in Kernus v. Morrison, 1996 WL 180005 (E.D. Pa. Apr. 15, 1996), found that the exclusivity provisions of the Act include contract claims as well as tort claims, reaching that result by analyzing the Pennsylvania Superior Court's decision in Mitchell v. Phila. Elec. Co., 422 A.2d 556 (Pa. Super. 1980). The Court in Kernus, like Winterberg, dismissed the breach of contract claim as barred by the exclusivity provision of the Act stating: "This court will follow Mitchell, and will dismiss plaintiffs' contract claim as barred by the exclusivity provision of the Workmen's Compensation Act." Id. at *4. Finding that the exclusivity of that Act is a bar to breach of contract claims is not limited to federal courts in Pennsylvania. State courts which have considered this specific issue have reached the same conclusion.

Next, we examine Mr. Rosario's alleged misrepresentation claim against the exclusivity of the Act. Mr. Rosario also argues that "the Workers' Compensation Act is not the exclusive remedy for 'intentional' acts of harm. *Fieni v. Pocopson Home*, 1991 WL 220280. The plaintiff's amended complaint pleads detailed claims of intentional misrepresentation that

11

are matters for discovery and trial." Pl.'s Mem. Law in Supp. Resp., p. 7. In Fieni, which predated Winterberg and Kernus, the late Judge Hutton of this Court granted the defendant's motion to dismiss the plaintiff's asserted claim for intentional infliction of emotional distress against her former employer. The defendant moved to dismiss the plaintiff's claim for intentional infliction of emotional distress on the basis that the exclusivity provision of the Act barred a separate claim for intentional infliction of emotional distress. Judge Hutton recognized that an exception to the exclusivity provisions of the Act exists for injuries caused to an employee by the intentional conduct of a fellow employee who was motivated by personal animosity towards the other, for example, for sexual or racial harassment by a fellow employee. Id. at *6 (citing Price v. Philadelphia Elec. Co., 790 F. Supp. 97, 99 (E.D. Pa. 1992)). Because the plaintiff did not identify with specificity an individual who allegedly perpetrated such behavior towards the plaintiff, Judge Hutton granted the defendant employer's motion to dismiss plaintiff's intentional infliction of emotional distress claim. Id.

In this case, Mr. Rosario asserts claims for intentional or negligent misrepresentation against the Moving Defendants in Count VII of the Amended Complaint. He specifically alleges that "[a]gents for Continental Casualty Company and CNA underscored and reiterated to Plaintiff that he would keep his job with J.D. Eckman," (Am. Comp., ¶ 92), he "significantly compromised his workers' compensation claim benefits (medical and indemnity) well below the maximum statutory amount for partial disability and total disability" (Id. at ¶ 93), "Defendants were motivated to settle the plaintiff's workers' compensation and limit their exposure and financial reserves. Defendant JD Eckman had changed insurance carriers and no longer contracted with Defendant [CCC]/CNA." (Id. at ¶ 94.) In addition, Mr. Rosario avers that

12

"Defendant Mark Eckman, acting individually and on behalf of Defendants JD Eckman, Continental Casualty Company and CNA, intentionally or recklessly misrepresented material fact to plaintiff that his employment with JD Eckman was longstanding, permanent, secure to wrongfully induce the plaintiff to compromise and release his workers compensation claims regarding his work injury of 2004 that precluded his ability to perform his lucrative preinjury welding occupation." (Id. at ¶ 96.)

As cited by the Moving Defendants, the Pennsylvania Superior Court's decision in Santiago v. Pennsylvania Nat'l Mutual Cas. Ins. Co., 418 Pa. Super. 178, 613 A.2d 1235 (1992), dealt directly with the relationship of exclusivity of the Act and a claim of misrepresentation. In Santiago, the plaintiff claimed that injuries sustained by him in a suicide attempt were the result of fraud and misrepresentations of the workmen's compensation insurer in settlement negotiations. Plaintiff sued the insurer in the Montgomery County Court of Common Pleas and the insurer was successful in having the claims dismissed, including the misrepresentation claim, based on the exclusivity of the Act. The Superior Court upheld the trial court's decision stating, "Santiago's averments concern the handling of his claim and his remedy is specifically addressed by the provisions of the Act." Id. at 194. The Court concluded that the exclusivity provision of the Act barred the misrepresentation claim and all of the other claims advanced by Plaintiff. Id. Other Pennsylvania court decisions reach the identical result of Santiago when analyzing the exclusivity of the Act in light of a misrepresentation claim.

In Switzer v. Crawford Risk Mgmt., 10 Pa. D&C 4th 68 (Pa. Com. Pl. 1991), the court barred plaintiff's claims of misrepresentation against a workmen's compensation insurance carrier because of the exclusivity of the Act. Switzer's claims were predicated on an allegation

13

that the worker's compensation insurer never advised the plaintiff of the need to undergo future surgery after submitting to an initial surgical procedure at the behest of the insurer that was handling a worker's compensation claim. Similarly, in Malone v. Specialty Prods. and Insulation Co., 15 F. Supp.2d 769 (E.D. Pa. 1998), the Court determined that a misrepresentation claim was barred pursuant to the exclusivity of the Act. Plaintiff argued that the defendants failed to take action to accommodate the plaintiff's disability by creating smoking restrictions within the workplace. The Court determined that his allegation of misrepresentation did not satisfy the limited exception to exclusivity of the Act provided in the law. See also, Kaucher v. County of Bucks, 2005 WL 283628 (E.D. Pa. Feb. 7, 2005)(exclusivity of the Act serves as a bar to plaintiff's misrepresentation claims). Accordingly, Mr. Rosario's intentional misrepresentation claims are barred by the Act and must be dismissed as to the Moving Defendants.

Mr. Rosario argues that the District Court in Bath Unlimited, Inc. v. Ginarte, O'Dwyer, Winogard and Laracuente, No. Civ.A. 04-03919, 2005 WL 2406097 (D.N.J. Sept. 29, 2005), denied defendants' motion to dismiss "concluding that relief was not available under Workers' Compensation Act." Pl.'s SurReply, p. 8. Plaintiff in that case, Bath Unlimited, was a New Jersey corporation and the defendants were an attorney and law firm and their 86 clients employed at the plaintiff's facility who filed compensation claims from September 2002 through September 2005. In 2002, the plaintiff corporation ceased manufacturing operations at that facility. The defendant attorney and law firm filed nearly identical compensation claims on behalf of the defendant employees following announcement of the facility closure. Before the worker's compensation claims were decided by the Division of Worker's Compensation, the plaintiff corporation brought suit in the District Court alleging that the defendants violated RICO,

14

conspired to violate RICO, violated the New Jersey RICO statute, conspired to violate the New Jersey RICO statute, violated common law fraud and common law conspiracy and the New Jersey Workers' Compensation fraud statute. The court noted that relief on the complaint was not available from the administrative agency because the only claim asserted in the lawsuit that the Worker's Compensation Court had jurisdiction to hear was the Worker's Compensation fraud violation. Id. at *6. The Court then concluded that the exhaustion of remedies doctrine did not apply, which then sent the inquiry back to whether the defendants established that there was a state administrative order that would injure them and possibly trigger Burford abstention. Id. at *6-*7. The court found that Burford abstention was not warranted. Id. at *7-*10. The court also found that the federal claims were not reviewable in the Worker's Compensation court and therefore not "parallel" state court litigation on the basis of which the federal court could exercise Colorado River abstention. Id. at *11. In addition, the court held that the plaintiff alleged claims that were sufficiently ripe for judicial decision. Id. at *12. Thus, the defendants' motion to dismiss the complaint based on principles of abstention and lack of justiciability under the ripeness doctrine was dismissed by the court. Id. Mr. Rosario's reliance on Bath is misplaced because the District Court in that case noted that the Worker's Compensation Court would have jurisdiction to hear only one claim of the seven asserted in that case, and therefore denied the defendants' motion to dismiss on the grounds of abstention and lack of justiciability under the ripeness doctrine. In the instant case, the Worker's Compensation Court has jurisdiction to address the common law state claims asserted by Mr. Rosario against the Moving Defendants.[2]

---

[2] The Worker's Compensation Court has, in fact, addressed in Mr. Rosario's petition to reopen the claims asserted against the Moving Defendants. Mr. Rosario's appeal from that decision is currently pending.

## IV. CONCLUSION.

Despite Mr. Rosario's attempt to characterize his claims as not related to his worker's compensation settlement, Mr. Rosario's claims against the Moving Defendants for breach of contract, breach of covenant of good faith and fair dealings, and intentional or negligent misrepresentation are inextricably related to the settlement and release of his 2004 worker's compensation claim. Although Mr. Rosario contends that the exclusivity provisions of the Act regard work claims for injury or death and Mr. Rosario's claims are in contract and fall outside the Act, the contract in question settled his worker's compensation claim, and thus any claims against the Moving Defendants fall within the purview of the Act and must be dismissed.

An appropriate Order follows.